MARTHA I. BURKE-MOBRAY ET AL. v. B. F. ELLIS ET AL.

Decided October 23, 1906.

**1.—Rescission of Sale—Authority of Agent—Notice.**

If before the payment of the money and delivery of the deed a vendee has notice that the vendor had changed her mind and had unconditionally instructed her agent, through whom the transaction was to be consummated, not to deliver the deed, a delivery by the agent would not bind the vendor.

**2.—Act of Agent—Ratification—Tender.**

Where a vendor, with full knowledge that her agent had disobeyed her instructions and consummated a sale of her land, accepts the purchase money of the land from the agent and keeps it in her possession and under her control for four years after suit filed before depositing it in the registry of the court, without making an actual tender of the same to the vendee, thus speculating in the fluctuations in the value of the land, a mere offer in her suit for rescission to do equity by returning the money is insufficient and she will be held to have ratified the acts of the agent.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower.

*Jno. L. Little* and *W. W. Walling,* for appellants.—Instructed verdict: Lee v. International & G. N. Ry. Co., 89 Texas, 588; Joske v. Irvine, 91 Texas, 581; St. Louis Gunning Co. v. Wanamaker, 90 S. W. Rep., 740; Lamberida v. Barnum, 90 S. W. Rep., 698.

Delivery of deed: King v. Hill, 75 S. W. Rep., 550; Houston v. Baird, 85 S. W. Rep., 474; Steffian v. Milmo Nat. Bank, 69 Texas, 517; Russell v. May, 90 S. W. Rep., 617; Brown v. Brown, 61 Texas, 59; Tyler v. Hall, 17 S. W. Rep., 319; Scottish-American Mfg. Co. v. Davis, 74 S. W. Rep., 17.

Ratification: Story on Agency, sec. 253 et seq.; Abbott's Trial Evidence (2d ed.), p. 876; Gould v. Day, 94 U. S., 405; St. Louis Gunning Delivery Co. v. Wanamaker, 90 S. W. Rep., 740.

Estoppel: Fifth Nat. Bank v. Iron City Bank, 92 Texas, 440; Bishop on Contracts, sec. 323.

Acquiescence: Koenigheim v. Sherwood, 79 Texas, 512; Koppelmann v. Koppelmann, 57 S. W. Rep., 570.

Intent—Evidence of: Robertson v. Gourley, 84 Texas, 578; Wade v. Odle, 54 S. W. Rep., 788.

*Greer, Minor & Miller,* for appellees.—The court did not err in instructing a verdict for defendants. Joske v. Irvine, 91 Texas, 575; Clark v. Wilson, 91 S. W. Rep., 629; Moore v. Giesecke, 76 Texas, 544; Atlantic Co. v. James, 94 U. S., 207; United States v. Maxwell, 121 U. S., 380; Brainard v. Holsaple, 4 Greene (Iowa), 485; 2 Warvelle on Vendors, p. 991.

REESE, ASSOCIATE JUSTICE.—Mrs. Martha I. Burke brought this suit against B. F. Ellis to cancel a certain deed to 45 acres of land near Sour Lake in Hardin County, which had been signed by her, but, as alleged in the petition, wrongfully delivered to Ellis by her agent; and to recover the land with rents and damages. After the suit was filed plaintiff intermarried with Gus Mobray, who made himself a party plaintiff *pro forma.* Ambrose Merchant, to whom the land had been conveyed after the institution of the suit, made himself party defendant.

Upon the trial before a jury the court instructed a verdict for the defendants and from the judgment plaintiffs appeal.

The only error assigned is upon the action of the court in instructing the verdict. The undisputed evidence presents the following facts: Appellant Martha I. Burke was in 1901 the owner of a tract of 45 acres of land near Sour Lake. In January of that year she went to Mineral Wells on account of her health, leaving her father, J. R. Rogers, as her agent to look after her property at Sour Lake, to rent it and to find a purchaser for it. It seems from the evidence that Rogers' authority only extended to finding a purchaser for the land, no price being fixed, the offers to purchase to be submitted to Mrs. Burke for her approval. He was not authorized to make a sale of the property except upon her approval of the price and terms. After dickering some time with the appellee Ellis, Rogers in April, 1901, came to terms with him, Ellis agreeing to take the property at the price of $1,800. A deed was prepared and sent by Rogers to appellant with request to sign and return at once. This deed reached appellant at Mineral Wells on April 12, 1901, and was at once signed and acknowledged by her and placed in the mail addressed to Rogers at Sour Lake. Afterwards, on the same day, appellant received a letter from her brother in Houston advising her, if she had not already done so, not to sell her Sour Lake land and telling her that lands there were rapidly advancing in value. Appellant at once, and on the same day, wrote to Rogers at Sour Lake directing him, if he had not delivered the deed to Ellis before receipt of her letter, not to deliver it, telling him of the advice she had received from her brother and that the price to be paid by Ellis was not satisfactory. This letter was received by Rogers before the delivery of the deed. A few days afterwards he informed Ellis that the deed had been received, that he had also received a letter from appellant which

he would like to show him, and Ellis went with Rogers to his home for that purpose. Rogers gave Ellis the letter to read, but Ellis could not read it and handed it back to Rogers to read for him. There is some contradiction in the evidence as to whether Rogers read all of the letter to Ellis, the latter denying that he read that part of it wherein Rogers was directed not to deliver the deed and insisting that Rogers only read that part of it to the effect that the price was not satisfactory. So far as this issue is concerned the evidence was such as to require it to be submitted to the jury unless evidence upon other issues authorized the peremptory charge. It was, however, finally agreed between Rogers and Ellis that $2,000 would be a satisfactory price for the land, which amount was paid by Ellis and the deed delivered to him by Rogers.

About three weeks after the date of the deed Rogers went to Mineral Wells on a visit and after being there several days turned over the money, $2,000, to appellant. Appellant testified that it was her intention, when she accepted the money, to pay it back to the parties if they would take it, and that she at once put the money in the bank.

The following testimony of Rogers, testifying as a witness for appellant, as to what took place when he paid over the money to appellant, is uncontradicted:

"Q. When you went up to Mineral Wells, after the sale, did you not tell your daughter then that you thought $2,000 was the full value of the land?

"A. When I went there and had been there a day or two the subject came up. I didn't tell her right away about it. She asked me what I did about the land and I told her that I had turned over the deed to him and got the money and she wanted to know how much I got and if I got her other letter, and I told her I did but I considered it a good sale, and she said she would rather I hadn't sold it; that her attorney advised her not to sell, to hold on to her land and she had rather I hadn't let it go.

"Q. But she took the $2,000?

"A. Yes sir, I paid it over to her.

"Q. She said she would rather you hadn't sold the land?

"A. Yes sir, she said she had rather I hadn't sold it; she first asked if I had received her letter.

"Q. And you told her you thought it was a good sale?

"A. Yes sir."

The exact date of the payment of the money to appellant is not fixed, but it was some time in the early part of May, 1901. Appellant remained in Mineral Wells until the 23d of May when she came to Houston and consulted attorneys which resulted in the bringing of this suit, the petition being filed June 6, 1901. The original petition contains the following: "Now plaintiff says that to do equity she now offers to pay into court, subject to defendants' order, the said two thousand dollars, with six percent interest per annum from the day this sum was received by plaintiff, or that said amount may be made a lien upon said land upon the setting aside of said deed." No tender of the money was ever made to Ellis, but on April 27, 1905, appellant paid into the registry of the court $2,000 with six percent per annum interest thereon from April 12, 1901, subject to the order of the court in this cause.

If before the payment of the money by Ellis to Rogers and the delivery of the deed Ellis had notice that since its execution appellant had changed her mind and had directed Rogers unconditionally not to deliver the deed, such delivery would not bind appellant and the sale was not executed thereby, unless appellant is bound by a subsequent ratification of the sale.

The undisputed evidence shows that appellant accepted the purchase price of the land from Rogers with full knowledge of all the material facts concerning the sale, protesting only that she would rather Rogers had not sold the land. It is true that appellant testified that she took the money with the sole intention of paying it back to Ellis if he would take it, and that she at once put it in the bank, but she kept it and never at any time made any actual tender of it to Ellis. It remained in her possession and subject at all times to whatever disposition she chose to make of it, from the time it was paid to her in the early part of May, 1901, until paid into the registry of the court on April 27, 1905. She gave no notice to Ellis of her intention for nearly a month after receiving the money. The mere offer to do equity by the payment of the money to Ellis as contained in her petition was not, in the circumstances, sufficient. If the bare acceptance of the money from Rogers did not constitute such a ratification of the delivery of the deed as to bind appellant, her subsequent conduct with regard to it would do so. If it be true, as testified by her, that she accepted the money for the sole purpose of repaying it to Ellis, it was incumbent upon her at once to disavow the sale to Ellis and tender back the money, and to follow up such tender by depositing the money in the registry of the court, when the suit was filed. She was seeking affirmative relief of a court of equity in the cancellation of the deed, and it was incumbent upon her promptly to tender the money to Ellis and upon his refusal to take it to place it beyond her own control and subject to the control of the court, for Ellis, upon a termination of the suit in her favor. (Weaver v. Nugent, 72 Texas, 277; Werner v. Tuch, 24 Am. St. Rep., 443.)

As it is, appellant, knowing that the value of her land was widely fluctuating on account of the excitement from the prospect of obtaining oil at Sour Lake, kept herself in a position, at all times, from the receipt of the money until the actual payment into the registry of the court, four years afterwards, either to press her suit for the land, or abandon it and keep the money. If by any chance the land had so depreciated in value during these four years as that it would have made it to her advantage to keep the money, which might have happened, appellant could have abandoned her suit and kept the money and appellees could not have helped themselves. She kept herself in a position to take advantage either of a fall in the value of the land, by keeping the money and abandoning her claim to the land, or a raise in such value by prosecuting her claim. This was entirely inconsistent with what was required of her to entitle her to relief from a court of equity by a cancellation of the deed and a recovery of the land.

Under the undisputed evidence upon this point appellants were not entitled to recover, and the court did not err in so instructing the jury.

*Affirmed.*