WAUGH et al. v. HUDSON et al.

(Court of Civil Appeals of Texas. Galveston. June 10, 1913. Rehearing Denied Oct. 9, 1913.)

1. Logs and Logging (§ 3*)—Right to Rescind—Mutual Mistake.

Owners of land, in negotiating for the sale of standing timber· thereon, told the prospective purchasers that R., a surveyor living near the land, would show it to them. R., however, pointed out to them land owned by a third person. After inspecting this land, they agreed to buy the timber and received a deed thereto. Soon after commencing cutting, they handed their deed to R. for the purpose of ascertaining where their boundaries were and were then told that they were on such third person's land. Disbelieving this, although without sufficient reasons for their disbelief, they continued cutting and paid the notes given for the timber without objection and a note given to procure an extension of time in which to remove the timber. *Held* that, had the purchasers stopped cutting and demanded a rescission of the contract when they first received notice of the mistake or such information as would have put a reasonably prudent person upon inquiry and which, if diligently pursued, would have led to the discovery of the mistake, they would . have been entitled to a rescission for mutual mistake, even though R. unintentionally deceived them as to the locality of the land; he being the vendor's agent.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

2. Logs and Logging (§ 3*)—Time for Rescission—Effect of Laches.

Having failed to rescind upon receiving notice or information putting them on inquiry of the mistake, such purchasers lost their right to rescind and could not recover back the purchase price paid, since one seeking to rescind for fraud or mutual mistake must do so promptly on discovering the fraud or mistake; and if, after receiving information which would put a reasonably prudent person upon ·inquiry, he does anything in confirmation of the contract, he cannot thereafter rescind.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by Emma A. Hudson against Jeff Cochran and others, in which William Waugh and others filed a cross-bill against the defendants Cochran and another. From a judgment denying them a recovery on their cross-bill, the cross-petitioners appeal. Affirmed.

E. B. Pickett, Jr., of Liberty, for appellants. J. M. Hansbro, of Coldspring, and A. T. McKinney, of Huntsville, for appellees.

McMEANS, J. On April 9, 1909, Emma A. Hudson brought this suit against Jeff Cochran, W. S. Dixon, E. B. Smith, and William Waugh to recover the value of timber cut and removed from a tract of 194 acres of land, part of the Robert Sherman survey in Liberty county, hereinafter referred to as the Emma Hudson tract. Smith died pending the suit, and Annie J. Smith, J. D. Langham, and Ben Campbell, his legal representatives, were made parties defendant. All the defendants answered, and the defendants William Waugh and the representatives of E. B. Smith, deceased, filed a cross-bill against the codefendants, Cochran and Dixon, alleging that on March 22, 1906, the said Cochran and Dixon, by a written conveyance, sold to said Waugh and E. B. Smith all timber ten inches in diameter and upwards upon a certain tract of land in the Sherman survey; described by metes and bounds; the consideration therefor being two promissory notes of the said Waugh and Smith for $467.25 each, bearing 8 per cent. per annum interest, dated March 21, 1906, and due 9 and 21 months, respectively, after date. They in said cross-action further alleged that Cochran and Dixon, acting by their agent, J. U. Richards, proposed to show William Waugh the timber they offered him and did point out as theirs the timber growing upon the Emma Hudson tract and at the time represented that said timber was theirs, which representation was afterwards proved wholly untrue; that on December 21, 1907, Smith and Waugh executed to Cochran and Dixon a promissory note for $45, due 12 months after date, with interest at 8 per cent., in consideration that Cochran and Dixon would grant a 12 months' extension for cutting the timber defendants Smith and Waugh supposed they had purchased from them, and that, at the time this $45 note was made for said purpose, Smith and Waugh were still under the impression that they had purchased from Cochran and Dixon the said timber growing upon the Emma Hudson tract of land and described in plaintiff's petition; and they were under this impression "by reason of the misrepresentations made to them by said defendants Cochran and Dixon that this was the timber which they were selling to these defendants as hereinbefore alleged."

They further alleged that they paid said $45 note, the interest, attorney's fees, and costs thereof, making same total $58.52, also at maturity paid said two notes for $467.25 each, the interest thereon, making same total respectively $495.28 and $532.62. They tendered into court for cancellation the said conveyance of timber made them by Cochran and Dixon on March 22, 1906, and further pleaded that after they discovered Cochran and Dixon had pointed out to them on the ground timber they did not own, "and the defendants were misled by such misrepresentations to accept the deed executed to them as aforesaid, they made known to said defendants Cochran and Dixon their willingness and desire to have same rescinded and requested said Cochran and Dixon to refund the money paid on said purchase as above alleged," which was refused. They prayed that said conveyance from Cochran and Dixon, dated March 22, 1906, be canceled and held for naught, and that they recover of Cochran and Dixon the sums paid them, as above indicated, with interest.

Upon trial without a jury judgment was rendered for plaintiff against appellants (who are William Waugh and the legal representatives of E. B. Smith, deceased) for $652.78 as damages for timber Smith and Waugh cut from the Emma Hudson tract of land; and that plaintiff take nothing from the defendants Cochran and Dixon; also that appellants take nothing on their said cross-action against Cochran and Dixon. From this judgment appellant, the said Waugh, and the representatives of said Smith have appealed.

Appellants admit that Waugh and Smith cut timber on plaintiff's land to the amount of $508, which, with the interest added, makes the sum of $652.78, for which judgment was rendered, and admit their liability to Mrs. Hudson therefor, and this part of the judgment is not complained of, and this appeal is only from that part of the judgment which denied them a recovery on their cross-action over against defendants Cochran and Dixon.

By their first assignment of error appellants complain of the action of the court in denying a recovery in their favor against their codefendants, Cochran and Dixon, on their cross-bill, because they claim that the undisputed evidence is that "the said defendants Jeff Cochran and W. S. Dixon pointed out to these defendants the timber which they cut, after obtaining the written conveyance from said Cochran and Dixon, dated March 22, 1906, and that the said timber was not owned by said defendants Cochran and Dixon but was afterwards discovered to belong to the plaintiff; and when said defendants so pointed out said timber they represented to these defendants that they owned the same, and these defendants relied thereon and believed that said timber was

the timber they had purchased, and therefore they were so induced to accept said written contract and proceeded to cut the said timber thereunder."

By their second assignment of error they complain of said action of the court for the reason, as they claimed, that the undisputed evidence shows that the written conveyance from the said defendants Cochran and Dixon to these defendants, dated March 22, 1906, does not describe the land from which the timber was cut, but in accepting that conveyance the vendees therein, E. B. Smith and William Waugh, from representations made to them by said Cochran and Dixon, believed that this conveyance described the timber which had been pointed out to them by said defendants Cochran and Dixon, and the same was so pointed out by them (the said Cochran and Dixon) as being their timber, and it was that timber which said Smith and Waugh agreed to purchase, and furthermore that was the timber for which they paid the said Cochran and Dixon.

In connection with these assignments, each of which is tendered as a proposition, the appellants submit the further proposition that "where a seller of timber makes a material representation relative to the condition, kind, quality, or quantity of the timber offered for sale, and such representation proves to be untrue, the buyer, if he has been misled thereby, may restore the property covered by the conveyance he has received, have the contract rescinded, and recover the purchase money paid; and in such case it is wholly immaterial whether the misrepresentations were fraudulently or innocently made."

[1, 2] The evidence in the record justifies the following findings of fact: The Sherman survey has been, in part, subdivided. One subdivision, containing 194 acres, belongs to the appellee, Emma A. Hudson (now Bettis). Another subdivision, consisting of 67 acres, formerly owned by T. J. Hare, and another containing 93 acres, formerly owned by John T. Hare, both adjoining the Emma Hudson tract, were acquired by appellees Cochran and Dixon. In February, 1906, these appellees, claiming that a large amount of ash and other hardwood timber was upon their said tracts, began negotiations with Waugh and Smith for the sale of the timber to them. Waugh, who it seems was also acting for Smith, indicated a willingness to buy but expressed a desire to see the timber before making the purchase and asked appellee Cochran to give him directions for finding the land in order that he might see and judge for himself of the amount of such timber standing thereon. Cochran told Waugh that when he (Cochran) went to see the land it was muddy, and that he (Waugh) could find it by following his buggy tracks. He also told Waugh that Mr. J. U. Richards, who was a surveyor and lived near the land, could show it to him, and he gave Waugh a note

to Richards, the contents of which was not proved. Waugh took the note to Richards, and the latter undertook to show him the land owned by Cochran and Dixon but instead of showing him the two Hare tracts owned by Cochran and Dixon, showed him the 194-acre tract of Emma A. Hudson. It appears that this tract was well timbered with ash and other hardwood, but the two Hare tracts had but little of such timber upon them. After inspecting the Emma Hudson tract, believing that it was the Hare tracts, Waugh agreed to buy the timber upon the terms proposed by Cochran and Dixon, and accordingly, on March 22, 1906, Cochran and Dixon executed to Waugh and Smith a deed conveying to them the timber on the Hare tracts, describing the tracts by metes and bounds, and Waugh and Smith executed to the grantors in payment therefor their two promissory notes for $467.25 each, dated March 21, 1906, bearing interest at the rate of 8 per cent. per annum, one due 9 months after date and the other 21 months after date. By the terms of the conveyance Waugh and Smith were given two years after its date in which to cut and remove the timber, and it was provided that all timber not cut and removed within said period should revert to the grantors. Waugh and Smith began cutting the timber on the Emma Hudson tract about the 1st of October, 1906, believing that they were cutting on the Hare tracts, and some time during that month, for the purpose of ascertaining where their boundary lines were, they gave their timber deed, which described the Hare tracts by metes and bounds, to the surveyor, Richards, and was then told by him that they were not cutting on the Hare but on the Emma Hudson tract; but notwithstanding this information they continued to cut timber on the Hudson until they had taken therefrom timber of the value of $508.99, as found by the court. Waugh, in explanation of why he continued to take the timber after being informed by Richards that he was not cutting on the Hare tracts, testified that it was because he was confident he was on the right land, but he gives no sufficient reasons to justify such confidence. Notwithstanding the knowledge they had thus acquired from Richards, Waugh and Smith thereafter paid to Cochran and Dixon the notes given for the purchase money, one of which fell due December 21, 1906, and the other December 21, 1907; and, so far as the record shows no objection to paying the same was urged by Waugh and Smith, and no complaint was made on account of the mistake of Richards in showing them the wrong timber at the time Waugh went to inspect the same. On December 21, 1907, Waugh and Smith gave to Cochran and Dixon their promissory note for $45, due 12 months after date, bearing 8 per cent. per annum interest, for an extension of time in which to cut and remove the timber on the land described in the timber

deed. This note was also paid at maturity without objection. Richards made a charge against Cochran and Dixon for his services in showing the land to Waugh and the account was paid by them.

Under these facts, were Waugh and the representatives of Smith entitled to a rescission and cancellation of their contract of purchase and to a recovery of the consideration paid for the timber upon tender of a conveyance of the timber conveyed to them by Cochran and Dixon? We think not. It is clear from the testimony, we think, that Waugh and Smith believed that they were buying the timber on the Emma Hudson-tract, and that this belief was induced by Richards, who, for the purpose of pointing out the Hare tracts' to Waugh, was Cochran's and Dixon's agent. It is immaterial that Richards unintentionally deceived Waugh as to the locality of the land. Had Waugh and Smith, when they first received notice of the mistake, or when they first had such information as would have put a reasonably prudent person upon inquiry, and which, if diligently pursued, would have led to the discovery of the mistake, stopped cutting the timber and demanded a rescission of the contract, their right of rescission, it seems, would have been undoubted. As said in Culbertson v. Blanchard, 79 Tex. 492, 15 S. W. 701: "That a contract may be entirely rescinded upon the ground of a mutual mistake as well as for fraud is well settled. In such cases, when the parties suppose they are bargaining with reference to specific property which they have in mind, when the fact it either does not exist or is materially different from what they believed it to be, it is very evident that their minds have not met and concurred so as to constitute a contract as to the real subject-matter as it is afterwards ascertained to be, and that the conveyance to the property as it really exists, though it may be identified as therein described, does not evidence the true intention of the parties, in making the contract. Pendarvis v. Gray, 41 Tex. 326."

But it is also well settled that, where one seeks to rescind a contract on the ground of fraud or mutual mistake, he must do so promptly on discovering the fraud or mistake; and if after such discovery, or after receiving such information as would put a reasonably prudent person upon inquiry which if pursued would lead to the discovery of the fraud or mistake, he does anything in confirmation of the contract, he cannot thereafter rescind it. 2 Pom. Eq. § 965; Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; Crutchfield v. Stanfield, 2 Posey Unrep. Cas. 480; Grabenheimer v. Blum, 63 Tex. 369. The testimony leaves us in no doubt that Waugh and Smith were informed by Richards, the surveyor, that they were cutting timber on the Emma Hudson tract, and this was in the same month in which they began cutting. They then knew or might have learned by reasonable inquiry that the land which had, been pointed out to them by Richards was not the Hare tracts, but notwithstanding this they continued cutting the timber on the Hudson tract until May of the following year, and with the knowledge they then possessed, or should have possessed, paid the notes given for the purchase money of the timber when they matured. Under such circumstances, appellants lost their right of rescission and cancellation, and the court very properly, under their pleadings, refused to render judgment in their favor on their cross-bill.

We have carefully examined all the assignments presented by appellants in their brief and are of the opinion that none of them points out reversible error. The judgment of the court below is affirmed.

Affirmed.