NATIONAL EQUITABLE SOC. OF BELTON v. DUNNINGTON.    (No. 1583.)

(Court of Civil Appeals of Texas.    Texarkana. Feb. 2, 1916.    Rehearing Denied Feb. 24, 1916.)

1. FRAUD ☞58(1)—ACTION TO RECOVER MONEY PAID—EVIDENCE.

In a suit to recover the sum paid to the defendant loan society under an agreement for a future loan as damages from the fraudulent representations of its agent, evidence *held* insufficient to sustain a judgment for the plaintiff.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 55;  Dec. Dig. ☞58(1).]

2. FRAUD ☞50—BURDEN OF PROOF.

In such suit, plaintiff had the burden of proving that he was entitled to the relief sought.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47;  Dec. Dig. ☞50.]

3. BUILDING AND LOAN ASSOCIATIONS ☞26 —LOAN CONTRACT—RESCISSION—TIME.

Plaintiff, if entitled to reject the contract of the defendant loan society when tendered, because it materially differed from what its agent said it would be, was required to act promptly upon a discovery of the fraud or variance.

[Ed. Note.—For other cases, see Building and Loan Associations, Dec. Dig. ☞26.]

Appeal from Bowie County Court;  Lee Tidwell, Judge.

Action by C. H. Dunnington against the National Equitable Society of Belton. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for the defendant.

L. H. Henry, of Texarkana, for appellant. Wheeler & Wheeler, of Texarkana, for appellee.

HODGES, J. This suit was instituted in the justice court by the appellee to recover the sum of $110 theretofore paid to the appellant under some kind of an agreement for a future loan, which will more fully appear in what follows. The nature of the plaintiff's demand is thus stated in the citation issued in the justice court:

"Defendant is a corporation under the laws of the state of Texas, with its principal office in the town of Belton, Bell county, Texas; and was on the 15th day of March, 1915, pretending to make loans for the purpose of improving and building homes to persons desirous of borrowing money for that purpose on real estate security; that defendant on or about the said date, in Bowie county, Texas, by its duly authorized agent, fraudulently procured and induced plaintiff to subscribe for one of its contracts by then and there stating and representing to plaintiff that if he would pay to defendant the sum of $110.00 that defendant would immediately make a loan to the plaintiff in the sum of one thousand dollars upon real estate security which plaintiff offered as security for said loan; and that plaintiff, relying upon said statement and representations so made to him by the defendant, paid to said defendant the sum of $110.00. That said statements so made were fraudulent and untrue and made for the purpose of procuring and inducing plaintiff to pay to said defendant the sum of $110.00, and without any intention on the part of the defendant of making said loan or any loan, and that since said date and time defendant has refused to make any loan whatever, and refuses to pay to plaintiff said sum of money, but has appropriated same to its own use and benefit, to plaintiff's damage in the sum of $110.00."

This is the only statement of the facts pleaded and relied on by the appellee for the relief sought.

The defendant answered, in substance, as follows: (1) That the defendant had a written loan contract with the plaintiff setting forth the terms upon which defendant was to make plaintiff a loan of $1,000; that plaintiff failed and refused to comply with the terms of the written contract, which he had signed and accepted. (2) That defendant instructed its agent who sold plaintiff the contract to make no contract other than the one signed and accepted by plaintiff; that by the terms of that written contract plaintiff was advised that defendant's agent had no authority to make any other contract, oral or written, and the defendant is not bound by the oral contract which the plaintiff alleged was made with defendant's agent. (3) That plaintiff has defaulted in his monthly payments, and under the terms of his written contract all the payments theretofore made have become forfeited to the defendant.

This appeal is from a judgment in favor of the appellee for the full amount sued for.

[1] The first assignment of error in effect assails the judgment of the court as being without support in the evidence. The appellee testified in his own behalf, in substance, as follows: That on or about the 15th of March, 1913, he met the agent of the appellant, who explained to him appellant's method of lending money to those who desired to purchase or improve homes. The agent stated that the borrower would have to pay $10 cash and $10 per month for a contract for the loan of $1,000, and that the borrower could get a loan immediately after the payment of $110. This amount could be paid monthly or all at one time. The loan would become available within 30 or 60 days from the time of payment, but if $100 was paid at one time the loan could be obtained at once. On that explanation the appellee made an application to the appellant company through its agent for a loan contract of $1,000, and sent a draft for the sum of $100 to the appellant at Belton, Texas. He received in return a passbook showing the payment of that amount. He was also instructed by the appellant to send in an abstract of title to the property he wanted to place as security for the prospective loan. The abstract was sent in, and the appellee was informed by letters from the appellant that it would pass on his application as soon as practicable. This transaction occurred about the 22d of March, 1913. In April the appellee received the following letter:

"We have your favor of the 7th with regard to your application for a loan and beg to advise you that as soon as we can have an inspection of the property your application will be passed on, when you will be notified."

No objection was made to the character of the security offered. Not receiving loan, the appellee again, on May 8th, wrote the appellant, demanding the loan. In reply the appellant advised him that by its terms and conditions the contract which he held had no cash value until after payments had been made for 18 months, and he could borrow on the contract only after having paid for 6 months. He was also informed that his application was on file; that the property was being examined, and as early as possible the loan would be passed on and the appellee would be notified accordingly. The appellee says that this was the first notice that he had that he would not get a loan as the agent had told him. He immediately wrote to the society, demanding a refund of his money. This was refused, and he declined to make any further payments. On cross-examination he admitted that he signed a written application, which was later introduced in evidence by the appellant. He does not remember that he read the application before signing it, but says that the agent might have read it to him. He had the opportunity to read it. He did not see a loan contract until after he had paid the agent $10 and had sent $10 to the company. He did not sign the loan contract; the agent did not ask him to sign it, and nothing was said about signing it. The agent had told him that the contract would provide that he should be entitled to a loan as soon as he paid in $100 to the appellant society. He relied upon these statements as to what the contract would contain. One other witness was offered by the appellee, who testified that he heard the agent explain to the appellee what the contract would contain, and that he stated that it would provide that the society should make the loan within from 30 to 60 days from the time the $100 was paid in. The defendant then offered in evidence the following application:

"Application for a Loan Contract of National Equitable Society of Belton (Incorporated), Belton, Texas.

"I, C. H. Dunnington, being of legal age, hereby apply for one of your contracts for the amount of $1,000.00, in accordance with the plans of the society as set out in said contract, and have paid King & Mattehews, a solicitor (whose authority, I understand, extends only to the sale of contracts issued by the society under their printed covenants and requirements), $10.00 as purchase price for same, and I agree to pay the society hereafter without notice a monthly installment of dues on said contract of $10.00 on or before the 15th of each month following the date hereof, until the contract issued hereon is surrendered for a paid-up certificate of deposit, or cash surrender value, or on account of a regular loan being granted, or until said contract is fully paid according to its printed covenants and requirements.

"I have examined the plans of the society and have read a printed copy of your contract and am familiar with and understand and accept all the covenants and requirements of said contract, and I make this application expressly and solely upon the terms and conditions of this application, and the covenants and requirements of said contract issued by the society, and not upon the faith of any statements, promise, undertaking or guarantee on the part of said solicitor or any person, and it is hereby expressly agreed that this application without corporeally attached thereto shall be a part of the contract issued hereon and every condition hereof and statement herein is as binding as if corporeally attached to or incorporated in said contract.

"In witness whereof, I hereunto subscribe my name this 13th day of March, 1913.

"Class B. [Signature] C. H. Dunnington."

The nature of the appellee's cause of action, as disclosed by the statement in the citation, appears to be one for damages resulting from the false and fraudulent representations of the appellant's agent. These false and fraudulent representations, according to the appellee's testimony, consisted of statements by the agent that if the appellee would pay the sum of $110 he would receive a contract from the appellant society which would entitle him to a loan of $1,000 immediately or within 60 or 90 days upon approved real estate security. It is further shown that the sum of $110 was paid and the security demanded was furnished, but that the loan was refused upon the ground that still other payments must be made by the appellee before he was entitled to the loan under the terms of his contract. The proof shows that the first step in procuring a loan under this arrangement was the presentation by the prospective borrower of the written application quoted above. Upon its face this application was not for the loan direct, but "for one of your (appellant's) contracts for the amount of $1,000, in accordance with the plans of the society as set out in said contract." A further perusal of the application shows that it was contemplated that upon the payment of certain sums of money named a written contract governing the rights and liabilities of the contracting parties was to be executed and delivered. This instrument also shows that the authority of the soliciting agent extended only to the taking

of the application for the contract, and not an application for the loan. He may have misrepresented what the contract would provide with reference to the time when and the conditions under which a loan might be obtained. But the application recites that the appellee had examined a printed copy of the contract and was familiar with all of its covenants and requirements. This application furnished the data upon which the appellant was to act in executing and issuing its contract to the appellee.

The appellant had a right to assume that the applicant had done all that his application recited that he had done. If he had failed to examine a printed copy of the contract for which he applied, was ignorant of its terms and conditions, and was relying solely upon what the agent told him the contract would contain, then he misled the appellant by himself making false statements concerning material matters of fact. On the other hand, if he had in truth examined the contract, as stated in his application, and accepted its terms, his right to recover damages depends upon a breach of that contract, and not upon a failure of the appellant to do what the agent said the contract would provide for. If the agent misconstrued the contract as to when loan would be available, that was an error of opinion, for which the principal cannot be held responsible. Mechem on Agency, § 743. The construction of the contract was a matter equally open to the appellee; and if he relied upon the opinion of the agent, he did so at his peril.

The contract is not in the statement of facts, and cannot be looked to for the purpose of ascertaining its terms and conditions. But there is no contention that the appellant has breached that contract, and there is no remedy for the breach of a contract it did not make. If the appellee is entitled to recover any damages, it is because the appellant did not execute and deliver to him a contract in substantial accord with the representations of the agent. But this suit does not appear to be based upon a variance of that character; in fact, there is no averment or evidence of what that written contract contained; neither is there any evidence of its rejection by the appellee after it was presented to him. While he testified that he did not sign the contract, that may have been and doubtless was sufficient to bind him.

[2, 3] Assuming that under the facts before us the appellee might have rejected the contract when tendered because it materially differed from what the agent said it would be, it devolved upon him to act promptly upon a discovery of the fraud or variance. Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 597. The evidence shows that 2 months after the contract had been executed the appellee was demanding a loan which

could be claimed by him only under the terms of the written contract. It is not charged that this written contract was for any reason void or unfair; hence we must conclude that it was one by which the parties might be bound to the fulfillment of their respective engagements. To relieve the appellee in this instance because of the false statements of the agent, would be to shield him from the legal consequences of his own misrepresentations.

The facts of this case are in all material respects similar to those of National Equitable Society of Belton v. Carpenter, 184 S. W. 589, recently decided by this court. We think the principles of law there announced furnish the correct rule for the determination of this controversy.

The appellee is the mover in this litigation, and it devolved upon him to adduce sufficient evidence to show that he was entitled to the relief sought. In this he has failed, and there is nothing to indicate that his case might be strengthened upon another trial.

The judgment of the county court will therefore be reversed, and judgment will be here rendered in favor of the appellant, together with all costs both of this court and of the court below.