### BAUGH v. BAUGH. (No. 6144.)

(Court of Civil Appeals of Texas. Austin. April 21, 1920. On Motion for Rehearing, Oct. 20, 1920.)

1. **Contracts 🔑262—Waiver of fraud matter of intention to be inferred from acts and conduct.**

Whether delay in complaining of fraud for a period less than that of limitations consti-

tuted a waiver of the right to rescind is a matter of intention which may be inferred from acts and conduct.

2. **Frauds, statute of 🔑158(2)—Oral agreement to reconvey admissible as part of fraudulent scheme to defraud.**

In an action to cancel deed for fraud, testimony as to grantee's oral agreement to reconvey was admissible as against contention that such agreement was void under the statute of fraud, as a part of the fraudulent scheme to deceive in connection with other fraudulent representations, but could not have been relied on as an independent ground for rescission.

3. **Deeds 🔑203—Efforts at grantor's expense to induce grantee to reconvey held admissible in action to cancel deed.**

In action to cancel deed to brother for fraud, in which it was claimed that plaintiff by delay waived the right to rescind for fraud, testimony by the mother of plaintiff and defendant as to her efforts, at plaintiff's insistence, to procure a reconveyance of the land from defendant to plaintiff, *held* admissible on the question of plaintiff's efforts to procure a rescission, and on the question of whether he affirmed or acquiesced in the sale.

4. **Evidence 🔑324(1) — Admission of statement that family of grantor and grantee thought that grantee had robbed grantor held error.**

In action to cancel deed to brother for fraud, admission of statement of the mother of plaintiff and defendant that the family thought that defendant had robbed plaintiff *held* error.

5. **Deeds 🔑203—Exclusion of testimony as to kindness of grantee toward grantor in action to cancel deed held error.**

In action by one brother against another to cancel deed on ground of fraud, refusal to permit defendant to state at least generally the acts done by him in lending and advancing money to plaintiff under circumstances showing affection and kindness towards him prior to the execution of the deed *held* improper.

6. **Trial 🔑350(3)—Submission of immaterial question erroneous.**

In action to cancel deed on ground of fraud, submission of issue as to whether grantee informed grantor that it would be necessary to get an order from the probate court to sell a lot which the grantee had agreed to convey to the grantor's wife, as a part of the same transaction, *held* error in view of undisputed evidence that the grantor and his wife afterwards accepted the deed to the lot from the grantee as guardian.

7. **Deeds 🔑78—Court should submit special issue as to market value of properties conveyed in exchange in action for cancellation of deed.**

In action to cancel deed on ground of fraud, court should submit special issue as to what was the fair and reasonable market value of the land conveyed and other land conveyed in exchange therefor.

---

🔑For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Deeds ⊚⇒78—Whether grantor waived fraud by delay held for jury.**

In action to cancel deed for fraud, in which it was claimed that grantor by delay waived the fraud and affirmed the sale, the question of such waiver *held* for the jury.

#### On Motion for Rehearing.

**9. Appeal and error ⊚⇒1177(1)—On reversal for undue delay in suing in equity cause remanded.**

In action to cancel deed for fraud, the appellate court, in reversing judgment for grantor rescinding the sale because of delay in suing, will remand the case for new trial, where it is possible that a further showing as to right to equitable remedy may be shown.

**10. Appeal and error ⊚⇒930(3) — Questions not submitted presumed found by court.**

In action to cancel deed for fraud, in which it was claimed that grantor by delay waived the fraud and affirmed the sale, it must be presumed in support of the judgment for grantor that the court, in failing to submit such question to the jury before making a finding thereon, impliedly found that grantor had not waived the fraud.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Suit by L. P. Baugh, Jr., against John M. Baugh. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Harrison & Cavin, of Brownwood, for appellant.

Wilkinson & McGaugh, of Brownwood, for appellee.

#### Findings of Fact.

BRADY, J. Appellee brought this suit against appellant to recover 789 acres of land in Brown county, Tex. The first count of the petition was an ordinary action in trespass to try title, and the second count seeks to cancel a deed made by appellee to appellant, on account of alleged incapacity caused by long-continued use of intoxicants, and also because of false and fraudulent representations charged to have been made by appellant inducing the making of the deed.

Appellant answered with exceptions, a plea of not guilty, the general issue, and various special defenses, including the statute of frauds. The case resolved itself into one for equitable rescission, and was submitted to the jury upon special issues. The jury found against appellee on the question of incapacity, and no complaint is made of such finding.

The material averments of the petition as to the alleged fraud and misrepresentation are, in substance, these: That appellee was in debt several hundred dollars for a dwelling he had just built for a home in Brownwood, the possession of which he could not obtain without paying said indebtedness; that he owed $3,000, secured by deed of trust on the land in controversy, and was in need of money, which appellant, his brother, knew; that he sought help from appellant, in whom he had great confidence, and to whom he went for advice on business matters since the death of his father, about a year before. Alleging a fraudulent scheme and purpose on the part of appellant to acquire his property, he alleged that appellant proposed to assume the $3,000 indebtedness, and to convey to plaintiff's wife a lot in Brownwood, known as the Hill lot, in exchange for the land described in the deed sought to be canceled. The fraudulent representations inducing the trade were claimed to be that appellant represented the lot to be worth $5,000 in cash, and that appellant had been offered that sum for it; that some parties wanted it for a location for a large rooming house or a hotel; that they were then absent from Brownwood, but would return in a few days, and that then the trade could be closed; that, in addition to assuming the $3,000 incumbrance and conveying the Hill lot, appellant promised that he would secure appellee a loan on said lot of a sufficient amount to enable him to pay for his home, and would within three weeks sell the Hill lot for him for $5,000 in cash, and, if he did not do so, he would deed back to appellee the 789 acres; that appellant repeatedly represented to appellee that the lot was worth and would readily bring $5,000 in cash, and reiterated his promise and assurance that if he failed to do so he would reconvey the land. It was alleged that, induced by these statements, representations, and promises, appellee executed the deed to the land, and would not have done so but for the same, and that the representations and promises were false and fraudulent, and with no intention of appellant to perform. It was alleged that the lot was not worth over $2,000, and further that before the deed was made appellant represented to appellee that he had already executed to appellee's wife a deed conveying the lot, which was also charged to have been false.

The special answers of appellant substantially presented the defenses that appellee was not defrauded, because he received full value for the lot conveyed, and that after the execution of the deed to the land, and with full knowledge of all the facts, appellee ratified and affirmed the contract, exercised dominion over the lot, and offered same for sale to various people, and finally sold it to appellant, and applied to his own use the considerations received; that appellee had incumbered the lot and borrowed money thereon, and continued to manifest entire satisfaction with the trade for a period of

several years, and until after the discovery of petroleum oil in Brown county, and the apparent enhancement of real estate values on account thereof, and until appellant had leased the land for oil, and because of the possibility of valuable royalties from the lease being realized by appellant, and until after appellant had placed permanent and valuable improvements on the land; that the attempt to cancel the deed was an afterthought, induced by the possible mineral value of the land; and that by such conduct appellee was precluded from prosecuting a suit to rescind the contract and cancel the deed. Appellant specially invoked the statute of frauds.

The findings of the jury upon the special issues submitted were in substance as follows: That at the time appellee executed the deed to the land to appellant he was in a condition of mind to understand the nature and consequences of his acts and the contract; that appellant agreed with appellee to reconvey to him the land upon condition that he would be reimbursed for all money that he might be out in the transaction; that appellant represented to appellee that he had deeded the Hill lot to appellee's wife at the time the deed to the land was made; that appellant agreed with appellee that, in the event he could not sell the lot for the sum of $5,000 within a few weeks, he (appellant) would reconvey to appellee the 789 acres, and that at the time of the transaction it was the intention and purpose of appellant to deceive, mislead, and overreach appellee; that at the time the deed to the 789 acres was delivered to appellant he paid to appellee the sum of $250 cash, and delivered to him a note for $650; that at the time of the deed to the 789 acres appellant did not inform appellee that the lot would have to go through the probate court before a deed could be made to appellee's wife to such lot, and that appellee did not understand that an order of court would have to be obtained, and did not know that the title to the lot conveyed by appellant, as guardian, to appellee's wife, was vested in appellant's children; that appellant, at the date of the trial, had paid $960 interest on the incumbrance existing on the 789 acres when the deed was made to him; that appellee never complained to appellant that he was in any way overreached or defrauded until about the time this suit was instituted; that appellee did not sell the $650 note executed by appellant as a part consideration for the deed sought to be canceled after knowing of the fraud of appellant, and that neither he nor his wife offered the lot for sale after they knew of the fraud of appellant; that the amount necessary to reimburse appellant in the event of a cancellation of the deed was the sum of $3,383.83.

The court rendered judgment canceling the deed to the 789 acres, and vesting title thereto in appellee upon condition that within 70 days from the adjournment of court he should pay into the registry of the court, for the benefit of appellant, the sum of $3,383.83.

The material facts are that John M. Baugh is an older brother of L. P. Baugh, Jr., and that their father is dead; that L. P. Baugh, Jr., reposed great confidence in his brother, and looked to him for advice in · business matters; that he was needing money to complete paying for a home in Brownwood, and sought his brother's help in raising the money. The latter agreed to help him, and proposed to buy his land, and to put in the Hill lot in Brownwood for $5,000, and to assume the indebtedness on the land in controversy, representing that he had peculiar knowledge of the value of the Hill lot, and that it was worth $5,000, and that he had been offered that amount for the property by a man who wanted it to build an apartment house on it, and that he could get that amount for the lot within three weeks, and that, if he failed to realize $5,000 on the lot for appellee, · he would deed the land back to him. Appellant further represented that he was only making the trade to accommodate appellee, and that he would keep the land for him, and any day he wanted it back would reconvey it, if appellee should pay him dollar for dollar the money he was out.

The deed to the 789 acres of land was prepared by appellant's attorney, and that morning appellee had been drinking, and was under the influence of liquor, but, as found by the jury, he had the mental capacity to understand his acts. The deed recited a cash consideration of $2,500 and a vendor's lien note for $2,500. The note was executed and turned over to appellee upon the delivery of the deed, but at appellant's request was returned to him, and he stated that he would tear it up; that the recital was just to prevent the attorney from knowing their business. Appellee relied upon the statement and promises of appellant at the time the deed was made; and the verdict finds that appellant made the same with the intention of overreaching and defrauding.

Appellee admitted that within the three weeks in which appellant was to sell the lot for $5,000 for him he realized that he had been defrauded and admitted that he had known it ever since. Appellee's wife made the same admission, and further that she did not expect appellant to sell the lot for the amount that he had stated, and that appellee and she knew that the lot could not be sold for $5,000, and that this was just talk on the part of appellant. Appellee and his wife, after discussing the failure of appellant to sell the lot for $5,000, offered it for sale, appellee having listed the same with a real estate agent, and his wife, with his

knowledge, undertook to sell the lot for $2,500. This was about the time the three weeks had expired.

The deed to the land was executed August 27, 1914, and the deed to the Hill lot was made to appellee's wife November 19, 1914; and on the same day a deed of trust on the lot was executed to secure a note for $1,100. On January 18, 1915, appellee and his wife conveyed the Hill lot to appellant, in consideration of a note for $800 and the assumption of the $1,100 note. At the time of this conveyance appellee spoke to appellant about his promise to realize him $5,000 on the lot, or to reconvey the 789 acres, and appellant replied, in substance, that his prospective purchaser had not yet returned, and he did not know if he still wanted it, but that he hoped to sell the lot for that amount; that he would reconvey the 789 acres to appellee at any time if he were paid what he was out on the transaction.

Appellant never sold the lot for $5,000, and up to the time appellee and wife conveyed it to appellant the latter had never refused to reconvey the 789 acres, but had stated that he would do so at any time upon reimbursement. After this conveyance, in January, 1915, to the filing of the suit, in December, 1917, appellee never mentioned to appellant the reconveyance of the land, and the record does not show that appellee ever demanded a rescission of the contract, nor that he ever made any tender of the Hill lot back to appellant, or any of the other considerations received. There was in the petition, however, an offer to comply with any conditions imposed by the court for rescission of the deed.

The only evidence on the value of the Hill lot was offered by appellant, and was shown to be from $3,000 to $3,500. The land in suit was incumbered for $3,000 and several months' interest, and also by a ten-year lease for grazing purposes. The only evidence as to the value of the land in controversy was also offered by appellant and his witnesses, ranging from $6.50 per acre to $10 per acre. After appellant received the deed to the land, he built roads through it, put in a wooden bridge, and made two dirt crossings, the improvements costing from $175 to $200.

At the date of the trial a well was being drilled on this land for oil, under a lease which had been made by appellant in the fall or winter of 1917. About this time there was considerable oil excitement in Brown county, where the land was situated, and it appears from the record that appellant gave the lease on this land, in connection with 3,000 acres of other land belonging to him, under contract with the lessees to drill a deep well within a year on the land in controversy. The record does not show any offer or attempt by appellee to lift the lease from either the land in controversy or the 3,000 acres of other land of appellant.

## Opinion.

The case has been briefed with painstaking care and has been ably argued on both sides with abundant citation of authorities. We shall not be able to review these authorities, but will cite the cases thought to be illustrative of the principles governing this case.

We have concluded that the case should be reversed and remanded for another trial, because the evidence shows, as found by the jury, that appellee never complained to appellant that he was in any way overreached or defrauded until about the time the suit was instituted, and that, after full knowledge of the fraud alleged to have been committed, he delayed nearly three years to seek a rescission of the sale and the cancellation of the deed, and until such time as that, as the evidence strongly tends to show, it would be inequitable and unjust to appellant to apply the remedy of rescission.

It is claimed by appellee that, while there was no finding by the jury upon the issue of waiver by appellee of his equitable remedy, it will be presumed that the trial court impliedly found thereon in support of the judgment; and the same contention may be made as to an implied finding that the rescission would not work an injustice to appellant. While this is doubtless true, we think the evidence is entirely insufficient to support such implied finding.

The suit was not filed until December 3, 1917, and it is shown by appellee's own evidence that both he and his wife knew as early as September, 1914, that they had been defrauded; that within or about the expiration of the three weeks in which it was claimed appellant was to sell the lot for $5,000 or reconvey the land in suit, they were attempting to sell the lot for half the price they were to get; that in January, 1915, they conveyed the lot to appellant for less than half such price, and never demanded a rescission and reconveyance of the land until the suit was filed; it was also shown that they never tendered back the considerations paid for the lot, but denied receiving the same until the jury found against them upon this issue; and it was further shown that they knew all this time that appellant was improving the property as his own, and had leased it, together with 3,000 acres of other land belonging to appellant, to procure a test for oil, through the drilling of a well upon the land in controversy. The terms of the oil lease were not shown, and it does not clearly appear that the same was in force at the time of the trial, but, under the evidence, the inference seems to be that it was still existing. The evidence does not show just what injurious conse-

quences would result to appellant from a rescission of the sale of land without lifting the incumbrance created by the oil lease on the other lands of appellant. · However, the evidence is sufficient, in the absence of a contrary showing, to justify the inference that it would be inequitable to now enforce rescission. In the circumstances we have recited we do not think appellee has shown himself entitled to invoke relief in equity; and, while the facts are not conclusive as to the waiver of his remedy of equitable rescission, nor that injustice would result from the exercise of the remedy; the judgment should not be permitted to stand in the present state of the record.

As authority sustaining our conclusion, we cite the following: Black on Rescission and Cancellation, §§ 595–598; 9 Corpus Juris, 1198, § 77, page 1199, § 79, and page 1209; Winters v. Coward, 174 S. W. 940; Waugh v. Hudson, 159 S. W. 893; Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; National, etc., Soc. v. Dunnington, 184 S. W. 590; Burke-Mobray v. Ellis, 44 Tex. Civ. App. 21, 97 S. W. 321.

[1] Appellee has cited a number of authorities upon the point that waiver of the right to complain of fraud is a matter of intention, and that mere delay, short of the statute of limitation, does not avoid the right of rescission, but this is always open to explanation, and a reasonable excuse will prevent waiver. Generally speaking, these propositions are correct and supported by authority, but it is to be remembered that the intention of election or waiver may be inferred from acts and conduct. In view of the acts and conduct of appellee and ·of his wife, with his knowledge, the great preponderance of the evidence tends strongly to show a waiver, and that the assertion of the remedy was an afterthought, induced by the oil excitement prevailing in Brown county about the time of the filing of the suit.

Since we have decided to reverse and remand the cause, it becomes necessary to decide other questions raised in the brief.

[2] It is contended by appellant that it was error to permit evidence of the oral agreement of appellant to reconvey the land in controversy, because such agreement was void under the statute of frauds, and further because it could not possibly have constituted a material misrepresentation, in that the promise was void or voidable, at appellant's election, and could not, therefore, be relied upon by appellee for any purpose. In a strong argument able counsel for appellant have supported this view, and have cited several authorities upon the point that such promise is in effect a contract to convey one's title, and by its very terms contradicts the statute of frauds, and that, since appellant was not bound by the promise to perform, even if honestly made, the falsity of the

promise could not be treated as the misrepresentation of a fact furnishing any foundation for legal or equitable relief. The argument is strongly persuasive, and where the sole ground upon which rescission is sought is the making and failure to perform a parol contract to reconvey land, made without the intention to perform, we should hesitate long to hold that the right of rescission would exist. But such is not the case here. Appellee alleged and adduced evidence tending to show that appellant had falsely and fraudulently represented the value of the land to appellee, based upon facts claimed to be peculiarly within the knowledge of appellant, and fraudulently represented that he would realize for appellee the sum of $5,000 on the property exchanged for the land in suit, and in connection with such fraudulent representations and promise made the false oral promise to reconvey the land in suit if he failed to realize that sum for appellee, and that these representations and promises induced the sale. Under appellee's theory of the case, the essence of the fraud consisted in the fraudulent conduct of appellant and in appellee's failure to obtain the consideration for the trade. The material thing to appellee, and known to appellant, was the realizing of $5,000 for the lot. It was alleged, and there was evidence tending to prove, that appellant made the promise to reconvey as a part of his fraudulent scheme to deceive and to dupe appellee into assigning the title to his property. In these circumstances we think appellant is not in position to invoke the statute of frauds, because that would be, in effect, to use the statute as a shield for his own fraud. It is conceded in appellant's brief that it is now settled law in Texas that actionable fraud may be predicated on a promise to do something in the future, when the promise was made without any intention of fulfillment.

While perhaps not in point upon the exact facts, the following Texas cases may be cited in support of the principle that, where fraud has been accomplished through the inducement of a promise falsely made, equity will relieve against the fraud, either by rescission or by the construction of a trust ex maleficio: Clark v. Haney, 62 Tex. 511–515, 50 Am. Rep. 536; Cordova v. Lee (Sup.) 14 S. W. 208, 209; C. T. Ry. Co. v. Titterington, 84 Tex. 218–226, 19 S. W. 472–475, 31 Am. St. Rep. 39; Cearley v. May, 106 Tex. 442–444, 167 S. W. 725–726; Cook v. Hardin, 174 S. W. 633–635; Robinson v. Faville, 213 S. W. 316–320; 2 Pom. Eq. Juris (2d Ed.) § 1055, p. 1568; and Brown v. Doane, 86 Ga. 32, 12 S. E. 179, 11 L. R. A. 381.

It is also to be remembered that in such case the action is not to enforce the parol contract, but, in effect, the suit sounds in tort, and the defrauding party will not be permit-

ted to use the statute of frauds as protection to the enjoyment of the fruits of his fraudulent conduct.

If the case rested alone upon the mere parol promise of appellant to reconvey the land, as we have stated, we should hesitate to hold that this would entitle appellee to rescission, or to the benefits of a constructive trust, even though the promise was made with no intention of performance. In this connection we think it proper to say that the promise to reconvey claimed to have been made by appellant at the time appellee and his wife conveyed the lot to him several months after the original sale would not alone entitle appellee to a reconveyance of the land. It was made months after the sale of the land in controversy, and could not have induced appellee to part with his title, whether made with the intention to perform or not. If honestly made the promise would afford no ground of relief. If falsely made, it could not have induced appellee to act in the conveyance of the land in suit, because that had been accomplished several months before. Its only proper bearing would be upon the question of the diligence of appellee in asserting his rights. See Lancaster v. Richardson, 13 Tex. Civ. App. 682, 35 S. W. 749.

Appellant cites several cases in support of his contention, and we will briefly discuss some of them, and endeavor to point out wherein they are regarded as distinguishable from the instant case.

In Lancaster v. Richardson, 13 Tex. Civ. App. 682, 35 S. W. 749, the verbal promise to reconvey was not made at the time of the conveyance of the property in controversy. It was made long subsequent to the transaction in which the appellee conveyed to Lancaster the deed to the land, which purported to convey an absolute title. It thus became a mere naked parol promise to reconvey land, and seems to come clearly within the statute of frauds; and, furthermore, it was not made as an inducement to the owner to convey her title to the land in controversy, for that had already been assigned. No claim of fraud seems to have been involved.

Moore v. Cross, 87 Tex. 557, 29 S. W. 1051, was a case in which rescission was sought, based upon false promises, through which it did not appear that he had suffered any pecuniary loss, and the case does not seem to have involved any oral promise to reconvey. The promises do not appear to have been affected by the statute of frauds, and the holding was merely that the remedy was for damages, and not for rescission.

In Allen v. Allen, 101 Tex. 362, 107 S. W. 528, it appears that the parol agreement between the husband and wife was subsequent to the purchase of the land by the husband. The oral promise to make the wife a deed to the husband's title, in consideration of the payment of the husband's note out of the wife's funds, was not claimed to have induced the making of the deed to the husband to the land in controversy, which was acquired several years before from other parties. The holding was that the parol agreement was merely an attempt of the owner to convey his title, or a contract for the sale of his title, and was, therefore, within the statute of frauds, and the creation of an express trust was refused. The facts of the Allen Case are thought to be radically different from those of the instant case, especially in the particulars suggested.

We do not think the other cases cited are in point.

While the question is not free from difficulty, we have concluded that the statute of frauds does not furnish any ground for denying appellee equitable relief in the event he should sustain all his claims of fraud; and we therefore overrule the assignments raising this point.

Certain assignments complain of the admission in evidence of statements made by appellant to appellee, his wife, and his mother, as to his willingness to reconvey the land to appellee at any time, or to any member of the family. As we understand the pleadings, this testimony would be inadmissible, unless limited to the purposes suggested by appellee in his brief. We make this observation in view of the probability of another trial.

As to the evidence admitted over appellant's objection of the promises made by appellant at the time the lot was reconveyed to him in January, 1915, this evidence, as we have indicated, was not admissible as an original or independent ground of rescission, but was relevant upon the question of appellee's diligence in asserting his claim, and upon the theory that appellee was thereby lulled into security.

Appellant complains of the submission and of the failure of the trial court to set aside the findings of the jury upon questions Nos. 15 and 16, which presented the issues, respectively, as to whether appellee sold the note executed by appellant as part consideration for the deed for the land to one Coy McIntosh after knowledge of the fraud, and whether appellee offered or permitted his wife to offer the lot for sale after knowledge of the fraud. The point made is that the undisputed evidence established these issues adversely to appellee, and we are inclined to the opinion that the contention is correct, in view of the testimony of appellee and his wife that they knew of the alleged fraud about the time of the expiration of the three weeks in which appellant was to reconvey the land if he failed to procure the agreed price for the lot. It may be that such is-

224 S.W.—51

sues would be proper if restricted to the time when appellee discovered that appellant did not intend to redeem his promise to reconvey the land.

Appellant also complains of the submission of question No. 5 in the form stated by the court, especially in that it did not require a finding by the jury as to whether or not appellant intended to perform his alleged promise to reconvey. Special charges were requested specifically submitting this question. We think the criticism is proper, and that the trial court should specifically submit the issue substantially as requested.

[3, 4] There are assignments complaining of the admission of certain testimony by the mother of appellee as to her efforts, at his instance, to procure a reconveyance of the land from appellant to appellee, as irrelevant, immaterial, and prejudicial, and as being at variance with the pleadings. We think this testimony was admissible upon the question of appellee's efforts to procure a rescission, and upon the question of affirmance or acquiesence in the sale, but the pleading does not seem to embrace the claim that the promise to reconvey extended to any member of the family. We are also of the opinion that it was improper to permit the statement of appellee's mother that the family thought appellant had robbed her son.

[5] We are also of the view that the trial court should have permitted appellant to state, at least generally, the acts done by him in lending and advancing money to appellee, under circumstances showing affection and kindness towards him prior to the transaction in question. It may be that this testimony is of slight weight but this being a fraud case it was admissible as tending to show that he had not intended to defraud his brother.

[6] We are inclined to the view that the court should not have submitted question No. 8, as to appellant's not having informed appellee that it would be necessary to get an order from the probate court to sell the Hill lot. In view of the undisputed evidence, it seems a wholly immaterial issue, especially as appellee and his wife afterwards accepted the deed from appellant as guardian.

[7] We think upon another trial the court should also submit the special issue requested by appellant as to what was the fair and reasonable market value of the properties conveyed in the exchange.

[8] Appellant complains of the refusal of the trial court to give certain special charges upon the issue of appellee's alleged waiver and affirmance of the sale. We agree with appellee's counsel that these charges are upon the weight of the evidence, but upon another trial the issue should be submitted for a finding by the jury.

The other assignments not discussed nor mentioned in this opinion have all been carefully considered, are believed without merit, and are overruled.

The case is reversed and remanded.

Reversed and remanded.

### On Motion for Rehearing.

Both sides have filed motions for rehearing, and we will briefly discuss them in their order.

Appellant insists that we should not only reverse the judgment of the trial court, but should also render judgment in his favor. He also asks that we rule clearly and definitely upon the question whether or not appellee can rely, as a separate and distinct cause of canceling the deed in suit, upon the alleged false parol promise to reconvey the land obtained from appellee. In this latter request the appellee also joins.

[9] A careful consideration of the grounds for rehearing urged by appellant has convinced us that we should not accede to the request to reverse and render the case. We do not think it is necessary to add anything to the reasons assigned in our original opinion for this conclusion.

As to the other point, we were under the impression and still think we expressed our views clearly and unequivocally upon the question. However, in deference to the request of both parties, we will again state our views, and will expressly rule upon that point.

We hold that appellee cannot rely, as a separate and distinct cause for canceling the deed in suit, alone upon the alleged false parol promise to reconvey to appellee the land described in the deed. So considered, it is clearly within the statute of frauds. The statute has been expressly invoked as a defense, and we think it is applicable, in so far as such parol promise is relied upon solely as a distinct ground for rescission. The promise was voidable, at the option of appellant, and it is immaterial whether the promise was made with or without intention to perform. However, in so ruling we do so only for the guidance of the trial court in the event of another trial. We adhere to our views that under the entire pleadings the alleged oral promise may be relied upon by appellee, not as an independent ground for rescission, but in connection with the other fraudulent representations, and as a part of an alleged fraudulent scheme by appellant to induce the conveyance of appellee's land.

We have given careful consideration to the other grounds contained in appellant's motion for rehearing, which we believe have been substantially discussed in the original opinion, and which it is not deemed necessary to repeat.

[10] In appellee's motion for rehearing he complains of our finding that he "delayed to

seek a rescission of the sale and the cancellation of the deed until such time as that, as the evidence strongly tends to show, it would be inequitable and unjust to appellant to apply the remedy of rescission." He also challenges our finding "that the great preponderance of the evidence tends strongly to show waiver" of the fraud. We have concluded that this criticism is well taken, and that we have fallen into error in making these findings. These issues were not submitted to the jury, and under our statute it must be presumed, in support of the judgment, that the trial court impliedly found in favor of appellee upon these questions. A more careful consideration of the record has convinced us that we did not give sufficient importance to the implied findings of the court, especially in view of the relationship and close confidential relations between the parties, the testimony with reference to appellee's attempts to procure a voluntary rescission, and the fact that the trial court had before it the witnesses and was in a position to observe their demeanor, manner of testifying, character, and credibility. We are especially convinced that we should not have made the statement in the opinion "that the great perponderance of the evidence tends strongly to show that the assertion of the remedy was an afterthought, induced by the oil excitement prevailing in Brown county about the time of the filing of the suit." In view of the conflicting evidence and the testimony for appellee, offered to excuse the failure to sooner bring the suit, we think this statement was unwarranted, and that it would be unjust to appellee not to retract it. The writer feels a peculiar responsibility for this statement, and gladly joins in its withdrawal.

The sustaining of these grounds in appellee's motion does not, however, in our opinion, lead to the affirmance of the case. We pointed out in our opinion that it was error for the trial court to permit the mother of appellant and appellee to state that the family thought appellant had robbed her son. We also held that the trial court should have permitted appellant to state, at least generally, the acts claimed to have been done by him in lending and advancing the money to appellee, as tending to show a feeling of affection and kindness towards appellee prior to the transaction in question. We adhere to the view that these were errors of law committed by the trial court to the prejudice of appellant. We are unable to say that they constituted harmless error, and therefore we conclude that these rulings alone require a reversal of this case.

With the modifications above stated, we adhere to our original opinion, and overrule both motions.

Motions overruled.